IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) CASE NO. CR 4:20-CR-056 |
| v. | ) |
|  | ) |
| SERENDIPITY BUSINESS | ) |
| SOLUTIONS, LLC, *et al.* | ) |

**THE UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT HARRISON'S OBJECTIONS AND MOTION IN LIMINE**

The United States responds in opposition to Defendant Mark Harrison's Objections and Motion in Limine to exclude evidence of his prior conviction. Doc. 441.

On January 10, 2021, the United States gave notice of its intent to introduce evidence that Defendant Harrison was previously convicted in the United States District Court for the Northern District of Georgia on August 19, 2009 in docket number 1:09-CR-278, as well as the circumstances and facts surrounding the crimes, wrongs, and other acts. Doc. 435. The United States respectfully submits the convictions, as well as the facts and circumstances surrounding the convictions, are admissible to show intent, identity, knowledge, plan, and the lack of accident or mistake.

**I.    The Facts and Circumstances Surrounding the Prior Convictions**

Defendant Harrison has prior convictions involving the unlawful use of shark fins with this same organization. The Information and Judgement of Conviction are attached as Exhibit 1. In 2005, the United States Fish and Wildlife Service previously investigated Defendant Harrison and his former company, Harrison International,

LLC, which resulted in the conviction in Exhibit 1. In the previous case, Defendant Harrison represented himself to be the nation's largest shark fin buyer, purchasing "millions" of shark fins since he had been in the business, beginning in 1989. Defendant Harrison purchased shark fins in Florida from individual fishermen and later resold the fins in interstate commerce and foreign commerce. No report of the landing or sale of those fins were filed with any Florida authorities, as required by law. Agents confirmed that Harrison was shipping large quantities of shark fins to California and Hong Kong. Harrison facilitated the export of shark fins from Florida to California and from Florida to Hong Kong.

Shipping documents obtained in the prior investigation revealed that Defendant Harrison sold and exported shark fins exclusively to an import and export company, Wonkow International, located in both San Francisco, California and Hong Kong. Wonkow International was owned by Allen Leung. Allen Leung's business partner in Hong Kong was Kwong Ng. Kwong Ng is Defendant Terry Wu's father and the owner of Shun Fat Seafood Trading Company in Hong Kong.

Allen Leung ran the import-export business and was alleged to have laundered drug trafficking proceeds through a shark fin business. In 2006, Allen Leung was killed[1] at the San Francisco business location for Wonkow International, 603 Jackson Street, San Francisco, California.

---

[1] Allen Leung was murdered. *See United States v. Kwok Cheung Chow*, No. 3:14CR00196-CRB, 2015 WL 5094744 (N.D. Cal. 2015). The United States does **not** seek to introduce any evidence of the killing or gang related activity. Rather, the United States will simply refer to Allen Leung's death for context to explain why Defendant Harrison entered into business with Defendant Terry Wu.

2

The 603 Jackson Street address was the same address where Defendant Harrison shipped the shark fins to San Francisco during the 2005 investigation. A search of 603 Jackson Street revealed a stockpile of shark fins in the basement stacked floor to ceiling. After Allen Leung's death, Defendant Harrison continued to send shark fins to San Francisco and Hong Kong until January 2007, when the 2005 investigation into Harrison's activity turned overt.

The current investigation revealed that after the death of Allen Leung, Defendant Terry Wu took over the San Francisco business and Defendant Terry Wu's father continued the business in Hong Kong. The facts and circumstances surrounding the prior convictions show that Defendant Harrison supplied shark fins to his business partners in California and Hong Kong, which included Defendant Terry Wu, and Defendant Terry Wu's father. The prior convictions concern the unlawful use of shark fins with these business partners. The prior investigation further revealed that Allen Leung, Defendant Terry Wu's father, and later Defendant Terry Wu, financed Harrison's unlawful shark fin business. In his prior conviction, Defendant unlawfully made money by exporting shark fins in an effort to circumvent federal law.

On August 19, 2009, Defendant Harrison was sentenced to probation for a term of five years for his unlawful shark fin business. As a condition of his probation, the court ordered that Defendant "shall not engage, directly or indirectly, in activities related in any way to sharks or parts or products thereof, in any capacity, including, but not limited to, employment, trade, buying or selling shipping, transporting,

acquiring, possessing, research or volunteer activities." Exhibit 1, Judgement. Defendant Harrison's probation ended in August 2014.

As part of this current investigation, agents obtained email communications between Defendants Terry Wu, Natalie Wu, and Mark Harrison. The email communications began in 2013. In the emails, Defendant Harrison discusses getting back into the shark fin business with Defendant Terry Wu, his father, Kwong Ng, and his father's company, Shun Fat.

Defendant Harrison is currently charged with conspiring with Defendants Terry and Natalie Wu, and their company, Defendant Serendipity Business Solutions, to commit wire and mail fraud and to launder money. Doc. 3. In general, Defendant Harrison is alleged to have unlawfully operated a business dealing in shark fins in violation of federal and state law. Defendant Harrison is also alleged to have concealed the illegal proceeds from this unlawful shark fin business.

## II. The Evidence is Admissible Under Rule 404(b)

Defendant Harrison's current case is similar to his prior case and conviction. In both cases, Defendant Harrison conspired with the same business partners to make money by operating an unlawful shark fin business to circumvent the law. Although the laws circumvented are different, the prior case is still relevant evidence of intent, identity, knowledge, plan, and the lack of accident or mistake. Defendant argues that because the counts or charges are different and because the prior conviction occurred in 2009, this Court should preclude the evidence. However, that is not the analysis.

4

Rule 404(b) is a rule of inclusion. *United States v. Sanders*, 668 F.3d 1298, 1314 (11th Cir. 2012). A previous offense may be admitted to show intent, identity, knowledge, plan, and the lack of accident or mistake in committing the charged offense when (1) the evidence is relevant to an issue that does not question the defendant's character (i.e., the intent of the previous offense helps show the intent of the charged offense); (2) there is sufficient proof to show that the defendant "committed the extrinsic act;" and (3) the "evidence must possess probative value that is not substantially outweighed by due prejudice" if the evidence was admitted. *United States v. Barrington*, 648 F.3d 1178, 1186 (11th Cir. 2011).

### A. The evidence is relevant to an issue other than Defendant's character.

Evidence that Defendant violated federal law to export shark fins to his business partners in California and Hong Kong, involve the same mental state as the charged crime because both were motivated and planned by the intent to avoid laws to make money exporting shark fins. Defendant's prior convictions are highly probative of intent, knowledge, and absence of mistake, particularly since they require the same mental state. *See United States v. Nerey*, 877 F.3d 956, 974-977 (11th Cir. 2017); *United States v. Prophete*, 522 F. App'x 583, 585 (11th Cir. 2013).

The first prong of the analysis is satisfied when both crimes require the same mental state. *United States v. Durham*, 554 F. App'x 901, 903 (11th Cir. 2014) (prior attempted bank robbery conviction properly admitted for instant Hobbs Act robbery since both require that the defendant intended to take another's property through force or violence). "Where the extrinsic offense is offered to prove intent, its relevance

5

is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses. Thus, where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied." *United States v. Edouard,* 485 F.3d 1324, 1345 (11th Cir. 2007). Even if the prior and present offense do not have precisely the same elements, the probative value of the evidence is not defeated. In *United States v. Baptiste*, the Eleventh Circuit noted that because the prior and present offenses both involved the intent to steal for personal gain, "the evidence concerning Defendant's credit card fraud was quite probative." 618 F. App'x 593, 597–98 (11th Cir. 2015).

### B. The acts will be established by sufficient proof to permit the jury to find that Defendant did the extrinsic acts.

Defendant was convicted of the prior acts that the United States seeks to introduce. *See* Exhibit 1. Through witness testimony and conviction documents, the United States will provide evidence for a jury to reasonably conclude that Defendant was involved in all offenses.

### C. The probative value of the evidence is not substantially outweighed by its undue prejudice.

By pleading not guilty to the conspiracies, nor stipulating to any of the elements, Defendant has placed his intent and knowledge at issue. *See United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998) ("A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue.").

Finally, in regard to weighing the "probative value against the threat of unfair prejudice," the apparent similarities between the extrinsic offenses and charged offenses, and the fact that Defendant Harrison only stopped his unlawful activity while on federal probation, helps to show that the evidence is not only probative, but also does not pose any threat of undue prejudice. *See, e.g., United States v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994) (holding that an extrinsic act that occurred eight years earlier than the charged crime was "not too remote" and therefore was admissible); *see United States v. Blanton*, 793 F.2d 1553, 1564 (11th Cir. 1986) ("We have invariably held that determining prejudice to outweigh probativeness under Rule 403 is an exceptional remedy invoked sparingly because that Rule has the effect of excluding relevant evidence from the jury's consideration.").

In considering the third prong of the admissibility test, courts consider whether the evidence is important to the prosecution's case. *United States v. Pollock*, 926 F.2d 1044, 1049 (11th Cir. 1991). Defendant Harrison's prior convictions, as well as the facts and circumstances surrounding the prior convictions, are important to the United States' case because Defendant has asserted an advice of counsel defense and a reliance on public authority defense. Docs. 409, 417. Defendant Harrison's prior convictions are similar enough and evidence of intent, knowledge, and absence of mistake, particularly in light of his defenses. *See United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir.1995) ("[W]hen other crimes evidence goes to intent rather than identity, a lesser degree of similarity between the charged crime and the uncharged crime is required.").

Although the prior convictions were in 2009, there is no bright line rule for considering temporal remoteness. "[The significance of the time period since the prior offense is diminished where one was incarcerated for a significant part of that time." *United States v. Borja-Antunes*, 530 F. App'x 882, 885-86 (11th Cir. 2013). Defendant Harrison was convicted in 2009 and sentenced to five years' probation. Defendant began communicating with Defendants Terry and Natalie Wu concerning the shark fin business in 2013 – less than one year before his federal probation expired, despite his court order to not engage in any conduct concerning shark fins. *See United States v. Jernigan,* 341 F.3d 1273, 1282 (11th Cir. 2003) (two and three years prior to the instant offense is well within the temporal bounds of relevance). The Eleventh Circuit has held that convictions as old as ten and fifteen years were not too remote. *United States v. St-Turbain*, No. 16-15928, 2019 WL 1125495, at *2 (11th Cir. Mar. 12, 2019) (ten-year-old conviction); *United States v. Lampley,* 68 F.3d 1296, 1300 (11th Cir. 1995) (fifteen–year–old conviction); *United States v. Sterling*, 738 F.3d 228, 239 (11th Cir. 2013) (fifteen-year-old conviction).

Finally, any prejudice can be tempered by an appropriate jury instruction. *United States v. Diaz–Lizaraza,* 981 F.2d 1216, 1225 (11th Cir.1993) ("[A]ny unfair prejudice possibly caused by [the introduction of Rule 404(b) evidence] was mitigated by the trial judge's limiting instructions.").

### III.  Conclusion

For the foregoing reasons, Defendant Mark Harrison's Objections and Motion in Limine should be denied.  The evidence is admissible under Rule 404(b) as proof of intent, identity, knowledge, plan, and the lack of accident or mistake.

        Respectfully submitted,

        DAVID H. ESTES
        UNITED STATES ATTORNEY

        ***/s/ Tania D. Groover***
        Tania D. Groover
        Assistant United States Attorney
        Georgia Bar No. 127947

Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 652-4422
E-mail: tania.groover@usdoj.gov